UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -v.-                                     1:08-CR-208 (LEK)

STEVEN RAY MORGAN,

                    Defendant.

## MEMORANDUM-DECISION AND ORDER

On April 28, 2008, Defendant Steven Ray Morgan ("Morgan" or "Defendant") was charged in a five-count indictment with possession with intent to distribute crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and (b)(1)(B); possession of a firearm after having previously been convicted of three violent felony offenses and/or serious drug offenses, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).  Indict. (Dkt. No. 6).  On August 1, 2008, Morgan filed the instant Motion to suppress all statements he made to law enforcement on March 25, 2008 (the day of his arrest for the aforementioned charges), and all evidence seized on March 25, 2008 from 708 Craig Street and 833 Grant Avenue in Schenectady, New York.  Mot. to Suppress (Dkt. No. 13).

By Order dated September 15, 2008 (Dkt. No. 15), the Court denied the Defendant's Motion to the extent that it challenged probable cause and the particularity of the search warrant for 708 Craig Street.  The Court also ordered a suppression hearing, to enable the parties to present evidence as to the circumstances of Morgan's oral and written statements to law enforcement; Morgan's standing to assert the Fourth Amendment in relation to the search at 833 Grant Avenue; the

1

execution of the search at 833 Grant Avenue, if the Court finds that evidence introduced on the

standing issue so warrants; and the implications of Federal Rule of Criminal Procedure 41.  The

suppression hearing was held on October 14, 2008.  Both the Defendant and the Government

provided the Court with further briefing following the hearing.

I.      BACKGROUND

In March 2008, law enforcement agents were conducting an investigation into the alleged

cocaine base ("crack") trafficking of the Defendant in Schenectady, New York.  See Government's

Mem. in Opp'n at 2 (Dkt. No. 14).  As part of this investigation, a Confidential Informant ("CI")

was utilized to make a purchase of an ounce of crack cocaine from an individual the Government

contends was Morgan outside of 833 Grant Avenue in Schenectady on March 3, 2008.  See id.  On

March 13, 2008, the CI arranged by telephone to purchase an ounce of crack cocaine from an

individual the Government contends was Morgan.  See id.  The Government contends that Morgan

directed the CI to make the purchase from an unidentified female.  See id.  The CI made the

purchase from an unidentified female inside of 833 Grant Avenue.  Id.

On March 21, 2008, Detective Daniel Moran of the Schenectady Police Department, who

was assigned to the Capital District Drug Enforcement Task Force ("Task Force"), sought and

obtained search warrants from Schenectady City Court Judge Vincent Versaci for apartments

located at 708 Craig Street and 833 Grant Avenue, Schenectady.  Government's Mem. in Opp'n at

2; Search Warrants and Applications (Dkt. No. 13, Attach. 2 and 4).  The Task Force consists of

federal agents as well as state and local investigators from surrounding local police departments.

Suppression Hr'g Tr. at 6.  Attached to the applications was a Drug Enforcement Administration

("DEA") Report of Investigation (DEA 6) prepared by DEA Special Agent Brian Cernak ("Agent

Cernak") as well as sworn statements of the CI.  Government's Mem. in Opp'n at 2; Search Warrants and Applications (Dkt. No. 13, Attach. 2 and 4).

On March 25, 2008, the search warrants were executed by officers of the Task Force. Government's Mem. in Opp'n at 3; Def.'s Mem. in Supp. at 2 (Dkt. No. 13, Attach. 1).  Officers seized marijuana, packaging materials and a scale from 708 Craig Street, and crack cocaine, marijuana, a scale and a loaded handgun from the top of the stairs leading from the first floor apartment to the basement at 833 Grant Avenue.  Government's Mem. in Opp'n at 3.  The Defendant was located within 712 Craig Street and arrested at about 6:50 a.m. on March 25, 2008. Id.; Def.'s Mem. in Supp. at 2.  DEA Special Agent Pasquale DeRubertis ("Agent DeRubertis") alleges that he gave the Defendant Miranda warnings; the Defendant alleges that he was never advised of his Miranda rights.  Suppression Hr'g Tr. at 9-10; Def.'s Mem. in Supp. at 5.  The Government contends that following his arrest, the Defendant admitted to marijuana trafficking and denied crack trafficking.  Government's Mem. in Opp'n at 3.  Defendant was placed in a police vehicle and moved to an area outside of 833 Grant Avenue while the agents executed a search of that location.  Def.'s Mem. in Supp. at 2.  Approximately one hour later, Agents Cernak and DeRubertis obtained a written statement from the Defendant in which he admits to trafficking in crack and admits to his ownership of the crack and weapon seized from 833 Grant Avenue.  Id.; Statement (Dkt. No. 13, Attach. 5).

## II.     DISCUSSION

### A.     Admissibility of Statements

The Defendant claims he was not administered Miranda warnings prior to the extraction of oral and written statements by means of interrogation by law enforcement subsequent to his arrest

3

on March 25, 2008.  See Miranda v. Arizona, 384 U.S. 436 (1966); Def.'s Mem. in Supp. at 5.

Furthermore, Defendant states that he told the officers that he did not wish to speak with them, and

did not voluntarily and affirmatively waive his Miranda rights prior to making the alleged oral and

written statements.  Def.'s Mem. in Supp. at 6-8.

Incriminating statements made to law enforcement officers are admissible under the self-

incrimination clause of the Fifth Amendment if the officers advised the defendant of his Miranda

rights and the defendant validly waived those rights.  Miranda, 384 U.S. at 444; Dickerson v. United

States, 530 U.S. 428, 433 (2000).  A waiver of Miranda rights is valid if the waiver was voluntary,

knowing, and intelligent.  Colorado v. Spring, 479 U.S. 564, 572 (1987); Miranda, 384 U.S. at 444.

When a defendant moves to suppress a statement based on a violation of his Miranda rights, the

prosecution bears the burden of proving by a preponderance of the evidence that the statement was

made pursuant to a valid waiver of the Miranda protections.  Colorado v. Connelly, 479 U.S. 157,

168-69 (1986).

Courts evaluate the validity of a waiver of Miranda rights on the basis of the totality of the

circumstances.  Moran v. Burbine, 475 U.S. 412, 421 (1986).  There are two dimensions to this

inquiry.  First, the waiver must have been voluntary– that is, "the product of a free and deliberate

choice rather than intimidation, coercion, or deception."  Id.  Second, the waiver must have been

knowing and intelligent– thus "made with a full awareness both of the nature of the right being

abandoned and the consequences of the decision to abandon it."  Id.

The Court concludes that the Government has met its burden of showing by a preponderance

of the evidence that the arresting officers did advise Morgan of his Miranda rights.  At the

suppression hearing, Agent DeRubertis testified that he advised the Defendant of his Miranda rights

4

after Agent DeRubertis and other agents arrested the Defendant on the morning of March 25, 2008.

Suppression Hr'g Tr. at 9-10.  Agent DeRubertis testified that after he advised the Defendant of his

Miranda rights, Agent DeRubertis asked the Defendant if he understood those rights, and the

Defendant replied that he did.  Id. at 10.  DEA Special Agent William McDermott ("Agent

McDermott"), the supervisor of the Task Force, also testified that one of the arresting agents

informed him that the agent had issued Miranda warnings to Morgan following his arrest.  Id. at 47.

The Court finds the testimony of the agents to be credible.

Viewing the totality of the circumstances, the Court also finds that Morgan voluntarily,

knowingly and intelligently waived his Miranda rights when he agreed to talk to the Task Force

agents following his arrest.  Although the arresting officers did not record Morgan's Miranda waiver

in written form, there is no rule barring oral or implicit waivers.  See United States v. Gaines, 295

F.3d 293, 297 (2d Cir. 2002) (citing North Carolina v. Butler, 441 U.S. 369, 373 (1979)); see also

United States v. Scarpa, 897 F.2d 63, 68 (2d Cir. 1990) ("While merely answering questions after

Miranda warnings have been given does not necessarily constitute a waiver, no express statement of

waiver is required.") (citations omitted).  Agent DeRubertis testified that after administering a

Miranda warning to Morgan, Morgan stated that he did sell marijuana, but not other drugs.

Suppression Hr'g Tr. at 10-11.  Agent DeRubertis further testified that later that morning, Morgan

made statements that he also sold crack cocaine, and admitted to ownership of the crack and the

weapon recovered at 833 Grant Avenue.  Id. at 13.

There is no evidence that Morgan was subject to intimidation, coercion, or deception which

would render his waiver involuntary for Miranda purposes.  Morgan does not argue that his

statements were the products of "physical violence or other deliberate means calculated to break

[his] will." Spring, 479 U.S. at 574 (quoting Oregon v. Elstad, 470 U.S. 298, 312 (1985)).  There is

no evidence of improper conduct by the Task Force officers regarding "any of the traditional indicia

of coercion: 'the duration and conditions of detention . . . , the manifest attitude of the police

towards [the Defendant], [the Defendant's] physical or mental state, the diverse pressures which sap

or sustain [the Defendant's] powers of resistance and self-control.'"  Spring, 479 U.S. at 574

(quoting Culombe v. Connecticut, 367 U.S. 568, 602 (1961)).  The duration and conditions of

Morgan's confinement following his Miranda warnings–he was handcuffed in the back of a police

vehicle for approximately one hour before allegedly confessing to the crack and gun ownership–do

not constitute a level of coercive or oppressive police conduct that would cause the Court to

question the voluntariness of Morgan's statements.  While Morgan was handcuffed in the back of

the vehicle, Agent McDermott explained to Morgan the benefits of cooperation–that if Morgan

provided helpful information, the agents would forward that information to the prosecutors, and a

judge would decide whether that cooperation would warrant a downward departure or reduced

sentence.  Suppression Hr'g Tr. at 44-45. However, "statements to the effect that it would be to a

suspect's benefit to cooperate are not improperly coercive . . . [but] are merely common sense

factual observations."  United States v. Ruggles, 70 F.3d 262, 265 (2d Cir. 1995); see also United

States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995) (promises of leniency do not, without more, render

a confession involuntary).  Based upon the testimony at the suppression hearing and the parties'

submissions, the Court sees no evidence that the Defendant's statements were the product of

improperly coercive conduct by the Task Force agents.

The Court also concludes that the Defendant's Miranda waiver was knowing and intelligent.

There is insufficient evidence to conclude that Morgan failed to understand the nature of his rights

6

or the consequences of waiving them. The Court does not consider the Defendant's <u>Miranda</u> waiver

to be invalid due to any possible drug use of the Defendant during the morning preceding his arrest.

Agent DeRubertis testified that he believed there was marijuana being used at the residence where

Morgan was located prior to his arrest. Suppression Hr'g Tr. at 21. Agent McDermott also testified

that Morgan told him that he had used crack cocaine earlier that morning. <u>Id.</u> at 55. However, any

drug use by the Defendant on the morning of his arrest does not necessarily render his <u>Miranda</u>

waiver invalid; rather, the Court must examine the totality of the circumstances to assess whether

Morgan was able to knowingly and intelligent waive his rights. <u>See</u> <u>Shields v. Duncan</u>, 2003 WL

22957008, *14 (E.D.N.Y. Oct. 20, 2003) (finding that the circumstances of the defendant's

statements showed his <u>Miranda</u> waiver to be knowing and intelligent, despite his drug use);

<u>Avincola v. Stinson</u>, 60 F. Supp. 2d 133, 160 (S.D.N.Y. 1999) (same). At the suppression hearing,

Agent DeRubertis testified that after he advised Morgan of his <u>Miranda</u> rights, Morgan stated that

he understood those rights. Suppression Hr'g Tr. at 10. While Agent DeRubertis testified that

Morgan "rambled on about not knowing anything about other drugs, but that [Morgan] did sell

marijuana," he also testified that Morgan did not have slurred speech or glassy eyes, and was able to

walk without stumbling. <u>Id.</u> at 10-11, 22. Agent McDermott also testified that Morgan "understood

everything I was saying to him." <u>Id.</u> at 55. The circumstances demonstrate that the Defendant was

aware of his surroundings and able to interact with the officers, and there is no evidence that the

Defendant's cognition or speech were impaired. Therefore, the Court concludes that the

Government has met its burden of showing that the Defendant, despite any possible drug use,

understood the consequences of speaking to the Task Force agents and validly waived his rights

when he spoke to the agents.

Moreover, the passage of time between the administration of <u>Miranda</u> warnings to the

Defendant and the later questioning by Agent McDermott while the Defendant was inside the police

vehicle does not render the Defendant's <u>Miranda</u> warnings invalid. "It is well established that once

an arrested person has received a proper <u>Miranda</u> warning, the fact that questioning is stopped and

then later resumed does not necessarily give rise to the need for a new warning." <u>United States v.</u>

<u>Banner</u>, 356 F.3d 478, 480 (2d Cir. 2004) (vacated on other grounds sub nom) (citing <u>United States</u>

<u>v. Weekley</u>, 130 F.3d 747, 751 (6th Cir. 1997)). Renewed warnings are necessary only if "the

circumstances [have] changed so seriously that [the defendant's] answers no longer [are] voluntary,

or . . . he no longer [is] making a 'knowing and intelligent relinquishment or abandonment' of his

rights." <u>Wyrick v. Fields</u>, 459 U.S. 42, 47 (1982) (quoting <u>Edwards v. Arizona</u>, 451 U.S. 477, 482

(1981)). Courts must look to the totality of the circumstances to determine whether renewed

warnings are necessary. See <u>Wyrick</u>, 459 U.S. at 47-48.

According to the testimony of the agents at the suppression hearing, approximately one hour

passed between the time Agent DeRubertis issued Morgan his <u>Miranda</u> warnings and the time

Morgan allegedly confessed to ownership of the crack and weapon. Suppression Hr'g Tr. at 32.

During this time, Morgan was placed in the back of a police vehicle, driven to a location outside of

833 Grant Avenue while agents searched that residence, and questioned by Agent McDermott. Id.

at 11-13; Def.'s Second Mem. in Supp. at 2-3 (Dkt. No. 20). Thus, the questioning of Morgan by

the Task Force agents was interrupted for only a short time between the initial questioning by

Agents DeRubertis and Cernak and the later questioning by Agent McDermott. Furthermore, there

is no indication that the conditions of Morgan's confinement changed so significantly during this

time as to affect the voluntary nature of Morgan's statements to the agents. The Court concludes

that based upon the circumstances, the agents were not required to provide Morgan with renewed

Miranda warnings prior to his later statements regarding the gun and drugs recovered at 833 Grant

Avenue.

Finally, the Court concludes that Morgan's statements were voluntary within the meaning of

traditional Due Process analysis.  The Due Process test for voluntariness of statements to police

centers on "'whether a defendant's will was overborne' by the circumstances surrounding the giving

of a confession." Dickerson, 530 U.S. at 434 (quoting Schneckloth v. Bustamonte, 412 U.S. 218,

223 (1973)).  Like the voluntariness analysis under Miranda, a court must examine the totality of the

circumstances when deciding whether a statement was voluntary under the Due Process clause.

Dickerson, 530 U.S. at 434.  This analysis focuses upon three broad areas: characteristics of the

accused; conditions of the interrogation; and the conduct of law enforcement officials.  Green v.

Scully, 850 F.2d 894, 901-02 (2d Cir. 1988).  Here, the Defendant had prior experience with the

criminal justice system, and the Defendant does not present any evidence that his intelligence or

background would render him unduly susceptible to police coercion or intimidation.  See Ruggles,

70 F.3d at 265 (relevant characteristics of the accused include his prior criminal record, maturity,

education, and intelligence).  There is no evidence of physical abuse or threats by the police; nor

were the duration and conditions of questioning unduly harsh or oppressive such as to overbear the

Defendant's will.  See United States v. Tudoran, 476 F. Supp. 2d 205, 215-16 (N.D.N.Y. 2007).  In

short, the totality of the circumstances reveals that the Defendant's statements were voluntary, and

that the admission of these statements would not violate Due Process.

**B.      Standing to Challenge Search of 833 Grant Avenue**

Defendant alleges that the evidence seized from 833 Grant Avenue in Schenectady, New

York, on March 25, 2008, must be suppressed based on several Fourth Amendment violations, including that the search warrant failed to establish probable cause to search the premises; that the warrant failed to satisfy the Fourth Amendment's particularity requirement; and that the execution of the warrant exceeded its permissible scope.  See Def.'s Mem. in Supp. at 10.

However, the Defendant has not demonstrated that he has standing to assert Fourth Amendment challenges to the search and seizure of items at 833 Grant Avenue.  "[T]o claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable."  Minnesota. v. Carter, 525 U.S. 83, 88 (1998).  Neither the suppression hearing testimony nor the Defendant's submissions establish that the Defendant was a resident, overnight guest, or otherwise had a sufficient connection to 833 Grant Avenue to afford him standing to contest the constitutionality of the search of that address.  See, e.g., Unites States v. Osorio, 949 F.2d 38, 42 (2d Cir. 1991) (holding that an overnight guest may raise a Fourth Amendment objection to a warrantless search of the host's home).  A defendant's presence for the sole purpose of a business transaction, such as selling drugs, does not give rise to a Fourth Amendment interest.  Carter, 525 U.S. at 86, 89.

As the Defendant has not demonstrated that he has standing to challenge the constitutionality of the search of 833 Grant Avenue, the Court will not address the merits of the Defendant's Fourth Amendment arguments as to the execution of that search.  See, e.g., United States v. Goldsmith, 432 F. Supp. 2d 161, 162-63 (D.Mass. 2006).

**C.	Rule 41**

Rule 41 of the Federal Rules of Criminal Procedure governs the issuance of federal search warrants. The Defendant argues that the search warrants must comply with Rule 41 because "[t]he

investigation was a federal investigation, the resources were federal resources and the agents were

task force or DEA agents," and that each warrant failed to comply with Rule 41.  Def.'s Mem. in

Supp. at 10.  Both warrants were issued on applications made by Detective Daniel Moran of the

Schenectady Police Department.  Warrant App. for 708 Craig St. (Dkt. No. 13, Attach. 2); Warrant

App. for 833 Grant Ave. (Dkt. No. 13, Attach. 4).  At the suppression hearing, Detective Moran

testified that Agent Cernak asked Detective Moran to prepare the search warrants and bring them to

a judge, although Detective Moran believed that Agent Cernak did not ask him to go to any specific

court.  Suppression Hr'g Tr. at 60.  Detective Moran further testified that in his role as a member of

the Task Force, he was a sworn, deputized DEA agent.  Id.  Agent McDermott, the Supervisor of the

Task Force, also testified that the case did not develop from the start as a federal investigation;

rather, this case was a "typical case" for the Task Force where "depending upon a lot of

circumstances" of the investigation, the agents determine whether to seek federal or state

prosecution.  Id. at 48.

     "[T]he mere fact that property seized pursuant to the warrant of a state judge at the request of

state law enforcement officers for violation of state law is offered in a federal prosecution does not

implicate the requirements" of Rule 41; "in such cases it is sufficient if the warrant meets the

requirements of the Fourth Amendment."  United States v. Burke, 517 F.2d 377, 382 (2d Cir. 1975).

However, even assuming that the investigation was sufficiently federal as to require compliance

with Rule 41, suppression of evidence would not be warranted under these circumstances.

Violations of Rule 41 will not lead to exclusion of the evidence obtained from the search unless "(1)

there was 'prejudice' in the sense that the search might not have occurred . . . if the Rule had been

followed, or (2) there is evidence of intentional and deliberate disregard of a provision in the Rule."

Burke, 517 F.2d at 386-87.  Here, there is no evidence of prejudice or intentional disregard of any

provisions of the Rule.  There was ample supporting documentation for the warrants.  Detective

Moran testified that while he had brought prior warrant applications to Judge Versaci, he had no

personal relationship with the Judge.  Suppression Hr'g Tr. at 61.  Finally, there is no evidence that

the decision to obtain the warrants from a state judge rather than a federal magistrate was made to

evade the provisions of Rule 41.  See United States v. Turner, 558 F.2d 46, 52 (2d Cir. 1977).

Therefore, even assuming that Rule 41 applies, there is no basis for the suppression of evidence

seized pursuant to the state search warrants.

**D.      Probable Cause for Arrest**

In his brief filed after the suppression hearing, the Defendant also challenges the basis of his

arrest on the morning of March 25, 2008.  Def.'s Second Mem. in Supp. at 4.  The Court finds that

the record establishes that the Task Force officers had probable cause to arrest Morgan.  Probable

cause to arrest requires that the officers "'have knowledge or reasonably trustworthy information of

facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that

the person to be arrested has committed or is committing a crime.'"  Jenkins v. City of New York,

478 F.3d 76, (2d Cir. 2007) (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).  Here, the

basis of such knowledge or information for the arresting officers can be found in the materials

supporting the search warrants, including the statements of the Confidential Informant and the

detailed Report of Investigation prepared by Agent Cernak.  As the police had probable cause to

arrest Morgan, there is no ground to suppress his statements following his arrest as "fruit of the

poisonous tree."  See Wong Sun v. United States, 371 U.S. 471 (1963).

**III.     CONCLUSION**

12

Based on the foregoing discussion, it is hereby

**ORDERED**, that Defendant Steven Ray Morgan's Motion to suppress statements and

evidence (Dkt. No. 13) is **DENIED**; and it is further

**ORDERED**, that the Clerk serve a copy of this Order on the parties.

**IT IS SO ORDERED**.


DATED:        January 21, 2009
              Albany, New York


_____
     Lawrence E. Kahn
     U.S. District Judge