**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**UNITED STATES OF AMERICA,**

   v.                                                             **08-CR-208**

**STEVEN RAY MORGAN,**

        **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.    INTRODUCTION**

After a jury trial, Defendant was convicted of one count of conspiring to distribute or possess with the intent to distribute crack cocaine (Count 1); three counts of distributing or possessing with intent to distribute crack cocaine (Counts 2, 3, and 4); one count of possessing a firearm by a prohibited person (Count 5); and one count of possessing a firearm in furtherance of a drug trafficking crime (Count 6).  Defendant's counsel filed a motion for a judgment of acquittal pursuant to Fed. R. Crim. P. 29 (dkt. # 63), and a motion for a new trial pursuant to Fed. R. Crim. P. 33 (dkt. # 64).  Thereafter, Defendant filed a letter *pro se* asserting, in essence, a Rule 33 motion on the grounds of ineffective assistance of counsel. See dkt. # 70.[1]  The Government has opposed each of the motions.

---

[1] Defendant asserts in this letter:

(continued...)

For the reasons that follow, the motions are denied.

## II.     STANDARDS OF REVIEW

### a.     Rule 29

Federal Rule of Criminal Procedure 29 provides that after a jury verdict, "the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a); see also Fed. R. Crim. P. 29(c)(1)(allowing for such motions after jury verdicts).

"A defendant challenging the sufficiency of the evidence supporting a conviction faces a 'heavy burden.'" United States v. Glenn, 312 F.3d 58, 63 (2d Cir. 2002) (quoting United States v. Matthews, 20 F.3d 538, 548 (2d Cir. 1994)).  On such motions, the Court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Espaillet, 380 F.3d 713, 718 (2d Cir. 2004)(quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

"[C]ourts must be careful to avoid usurping the role of the jury when confronted with a motion for acquittal." United States v. Jackson, 335 F.3d 170, 180 (2d Cir. 2003).  In this regard, the Court must avoid substituting its own determination of the weight of the

---

[1](...continued)
I believe that [my lawyer] did not cover all issues in the case. I believe that his failure to cover all issues was . . . because he was not involved in the case long enough to know the case well. I met my lawyer on a Tuesday, he obtained the file from the Public defender on Wednesday, and we picked a Jury on Thursday. He did visit with me, but the fact is he did not have sufficient time to investigate, talk to witnesses and to prepare fully. I thought that once I got this new lawyer, my trial would be postponed . . . I was unaware of the fact that I could have requested for the Trial to be postponed until my lawyer was able to come up to speed with the case . . . he did not have enough time to properly prepare my defense. And with all due respect, I believe that I should receive a new trial.

dkt. # 70.

evidence presented and the reasonable inferences that may be drawn from that evidence. Id. "Indeed, it is the task of the jury, not the court, to choose among competing inferences that can be drawn from the evidence." Id.; see also United States v. Florez, 447 F.3d 145, 154-155 (2d Cir. 2006)("In assessing sufficiency, we are obliged to view the evidence in its totality and in the light most favorable to the prosecution, mindful that the task of choosing among permissible competing inferences is for the jury, not a reviewing court.").

> "'[T]he relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Glenn, 312 F.3d at 63 (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979)).  A court's analysis considers "'the evidence in its totality,' and the Government 'need not negate every theory innocence.'" Glenn, 312 F.3d at 63 (quoting United States v. Autuori, 212 F.3d 105, 114 (2d Cir. 2000)). . . .   The relevant inquiry is "'whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" Autuori, 212 F.3d at 114 (quoting United States v. Mariani, 725 F.2d 862, 865 (2d Cir.1984)).

United States v. Triumph Capital Group, Inc., 544 F.3d 149, 158 (2d Cir. 2008).

### b.     Rule 33

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

> "Generally, a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" Smith v. Carpenter, 316 F.3d 178, 183 (2d Cir. 2003) (quoting Atkins v. N.Y. City, 143 F.3d 100, 102 (2d Cir.1998)). A district court has "broad discretion ... to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir.1992)).  Though a district court is entitled to "weigh the evidence and in so doing evaluate for itself the credibility of the witnesses," Sanchez, 969 F.2d at 1413 (internal quotation marks omitted), it "must strike a balance between weighing the evidence and

3

credibility of witnesses and not 'wholly usurp[ing]' the role of the jury," Ferguson, 246 F.3d at 133 (quoting Autuori, 212 F.3d at 120).  While courts have "broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29,"  they "nonetheless must exercise the Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" Ferguson, 246 F.3d at 134 (quoting Sanchez, 969 F.2d at 1414).

Triumph Capital Group, Inc., 544 F.3d at 159.

### III.   DISCUSSION

#### a.   Rule 29 Motion

In his Rule 29 motion, Defendant seeks a judgment of acquittal on Counts 1, 5, and 6 of the Superceding Indictment.

##### 1.   Conspiracy Count

As to Count 1, Defendant argues that "government failed to establish beyond a reasonable doubt  that a conspiracy existed and that the defendant was a member of the conspiracy."  The Court disagrees.

> When a defendant challenges the sufficiency of the evidence in a conspiracy case, deference to the jury's findings is especially important because a conspiracy by its very nature is a secretive operation, and it is a rare case where all aspects of a conspiracy can be laid bare in court with the precision of a surgeon's scalpel. The record must nonetheless permit a rational jury to find: (1) the existence of the conspiracy charged;  (2) that the defendant had knowledge of the conspiracy; and (3) that the defendant intentionally joined the conspiracy.  Furthermore, in a conspiracy punishable under 21 U.S.C. § 841(b)(1)(A), the government must also prove (4) that it was either known or reasonably foreseeable to the defendant that the conspiracy involved the drug type and quantity charged.

United States v. Santos, 541 F.3d 63, 70 (2d Cir. 2008)(interior ellipsis, citations and quotation marks omitted).  On a Rule 29 motion, the Court must "bear in mind that the jury's verdict may rest entirely on circumstantial evidence."  Jackson, 335 F.3d at 180.

The evidence at trial, viewed in the light most favorable to the prosecution,

4

established that

    i.    In late-February 2008, Defendant traveled from 708 Craig Street to 833 Grant Avenue, Latrice Parker's house, carrying a black bag. Upon arriving at 833 Grant Avenue, Defendant carried the bag down the basement stairs. Within minutes, Defendant returned to the kitchen of 833 Grant Avenue and Defendant and Parker argued about Defendant's use of Parker's house to store crack cocaine. In response to Parker's complaints, Defendant paid Parker several hundred dollars. See Trial Testimony of Keysha Williams.

    ii.    On March 3, 2008, Defendant and the Confidential Informant walked from 708 Craig Street to 833 Grant Avenue to consummate a crack cocaine transaction that the two had arranged by telephone. Defendant entered 833 Grant Avenue and, upon his exit, gave the Confidential Informant an ounce of crack cocaine in exchange for $1300. See Trial Testimony of Confidential Informant; Government Exhibits 5 & 6.

    iii.    On March 13, 2008, Defendant used a telephone to direct Parker in the sale of 1 ounce of crack cocaine to the Confidential Informant. See Trial Testimony of Confidential Informant; Government Exhibits 11 and 12. The Confidential Informant (and his telephone records) identified Defendant as the speaker on the telephone on March 13, 2008. See Trial Testimony of Confidential Informant; Government Exhibit 31. Keysha Williams made a voice identification of Parker from an audio recording of the March 13, 2008 drug sale transaction. See Trial Testimony of Keysha Williams; Fed. R. Evid. 901(5).

    iv.    On March 25, 2008, a handgun, approximately 83 grams of crack cocaine, and a digital scale were recovered from a black bag in the basement stairwell at 833 Grant Avenue pursuant to a search warrant. Defendant admitted that the gun and the drugs recovered from 833 Grant Avenue belonged to him. See Government Exhibit 21; Trial Testimony of Brian Cernak; Trial Testimony of Pat DeRubertis; Trial Testimony of John Pologa.

    v.    The drugs recovered on March 3, 2008, March 13, 2008, and March 25, 2008 were determined to be crack cocaine with a combined weight of over 135 grams. See Government Exhibits 34, 37, and 39.

This evidence was sufficient for the jury to conclude that Defendant and Latrice Parker entered into an agreement to distribute, and to possess with the intent distribute, crack cocaine; that Defendant had knowledge of the conspiracy; that Defendant intentionally joined and directed the conspiracy; and that the conspiracy involved the

5

distribution of at least 50 grams of crack cocaine. Therefore, Defendant's motion on this ground is denied.

### 2. Count 5 - Possessing a Firearm by a Prohibited Person

Count 5 charged Defendant with being a convicted felon who knowingly and intentionally possessed a Hi-point 9mm pistol in violation of 18 U.S.C. § 922(g)(1). At trial, Defendant stipulated that he was a convicted felon and that the Hi-point 9mm pistol in issue had moved across a state line (thereby satisfying the inter-state commerce requirement for such a charge). He asserts that "[t]he only issue for the jury's determination [on this count] was whether the item was possessed and whether it fit the definition of firearm." Def. Mem. L. p. 2. Defendant argues that

> the government failed to introduce evidence that the gun was ever tested or that the specific gun that was introduced into evidence would work in the manner specified in the statute. The government's proof related to 9mm guns, in general and not the specific firearm introduced into evidence. Based upon the foregoing, the defendant submits that the government failed to sustain all of the elements required for this count and that a judgment of acquittal must be granted.

Def. Mem. L. p. 2. The Court disagrees that the government failed to sustain all of the elements required for a Section 922(g)(1) conviction.

Section 922(g)(1) makes it unlawful for a convicted felon to "possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." The term "firearm" is defined at 18 U.S.C. § 921(a)(3) to mean, *inter alia*, "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; . . . ."

6

By its language, Section 921(a)(3) does not require that a weapon be actually able to expel a projectile provided the weapon "is designed to or may readily be converted to expel a projectile by the action of an explosive." Thus, "[w]here a weapon designed to fire a projectile is rendered inoperable, whether on purpose or by accident, it is not removed from the statute's purview." United States v. Rivera, 415 F.3d 284, 286 (2d Cir. 2005). "[A]n inoperable pistol [that was originally designed to fire a bullet] is a firearm within the meaning of § 921(a)(3)." Id. Consequently, even if the Hi-point 9mm pistol was not capable of firing a projectile, it could have fallen within the purview of the statute provided it was designed to fire a bullet and there was no proof that the design had been altered. See id. at 286-87.[2] The lack of testing or proof that the weapon "would work" does not prevent a determination that it was a firearm within the meaning of Section 921(a)(3). See United States v.Abdul-Aziz, 486 F.3d 471, 477 (8th Cir. 2007) ("While it is true, as Abdul-Aziz points out, that [the Government's witness from the Bureau of Alcohol, Tobacco, Firearms, and Explosives] did not actually test-fire the rifle and could not definitively say that it was a working firearm, § 921(a)(3) does not necessarily require that a rifle be operable to be considered a firearm.")

At trial, Special Agent DeRubertus, a firearms instructor for the Drug Enforcement Agency testified: (1) that 9MM guns will, or are designed to, expel a projectile by the action of an explosive; (2) that a bullet consists of a projectile expelled from the chamber of a gun when the firing pin on the weapon strikes and ignites the explosive in the bullet;  (3)

---

[2] In Rivera, the Second Circuit recognized "that a weapon originally designed to fire a projectile could perhaps be so redesigned or modified to remove it from § 921(a)(3)'s coverage. . . . For example, a gun with a barrel filled with lead, maybe for use as a theatrical prop, might perhaps no longer be deemed 'designed to' or 'readily be converted' to fire a bullet." 415 F.3d at 286-87.

that the gun recovered from Defendant was a 9MM handgun, and (4) at the time the handgun was recovered there were four rounds of ammunition found in the magazine of the weapon. Task Force Officer John Pologa testified that, when he discovered the handgun,

> I cleared the gun, it had four live rounds in the magazine, I made sure the gun was not loaded which means not having a round in the chamber, and I did the slide, pulled that back, maintained the slide being back so it indicates a safe weapon and prior to that I pulled out the magazine which had live ammo of .9 millimeter.

Trial Testimony of John Pologa, pp. 229-230.

This evidence was sufficient for a jury to conclude that the Hi-point 9mm pistol in issue was designed to expel a projectile by the action of an explosive within the meaning of 18 U.S.C. § 921(a)(3).  See United States v.Abdul-Aziz, 486 F.3d at 477 (The Government witness's "examination of the rifle and his subsequent testimony [that the rifle was designed to expel a projectile through the use of an explosive and, to the best of his knowledge, was a functioning firearm] constitutes some evidence that the rifle was functional, even though it had not actually been test-fired. Accordingly, [the] testimony constituted sufficient evidence to establish that the rifle met the definition of a firearm."). Indeed, the jury could draw the logical conclusion from the testimony of Officers DeRubertus and Pologa that the handgun had live ammunition in its magazine *because* it was designed to shoot the bullets, and that the bullets consisted of projectiles that were expelled through the use of an explosive.  Defendant's motion for a Judgment of Acquittal on this basis is denied.

### 3. Count 6 - Possessing a Firearm in furtherance of a drug trafficking crime

Count 6 charged Defendant with possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A). Defendant contends that "the record is absolutely devoid of any evidence that the defendant used, carried or possessed the gun during and in relation to the drug trafficking crimes alleged in the indictment." Pl. Mem. L. p. 3. The Court disagrees and finds that there was sufficient evidence upon which to convict Defendant of the § 924(c) count.

> In order to convict under 18 U.S.C. § 924(c), the government must prove that the defendant (1) possessed a firearm (2) in furtherance of a drug trafficking crime. See United States v. Finley, 245 F.3d 199, 203 (2d Cir. 2001). . . . "Possession of a firearm may be established by showing that the defendant 'knowingly [had] the power and the intention at a given time to exercise dominion and control over an object.'" Id. (quoting United States v. Hastings, 918 F.2d 369, 373 (2d Cir.1990)). This may be established by direct or circumstantial evidence. United States v. Payton, 159 F.3d 49, 56 (2d Cir.1998).

United States v. McCoy,  303 Fed. Appx. 45, 46-47 (2d Cir. 2008).

Officer Pologa testified that he found the Hi-point 9mm, with four rounds of live ammunition in its magazine, in close proximity to three ounces of crack cocaine recovered from 833 Grant Avenue. There was also evidence that Defendant admitted that and the crack cocaine recovered from 833 Grant Avenue belonged to him, that he owned the gun, and that he used the gun at 833 Grant Avenue "for protection."

In light of the evidence that Defendant sold crack cocaine from 833 Grant Avenue,

> [t]here was [ ] sufficient evidence for a rational jury to "find beyond a reasonable doubt that possession of the firearm facilitated [Morgan's ] drug trafficking crime ...; [that is,] afforded some advantage (actual or potential, real or contingent) relevant" to the offense. United States v. Lewter, 402 F.3d 319, 322 (2d Cir.2005). The proximity of the firearm to drug-related contraband seized [at 833 Grant Avenue ] - particularly in light of [Morgan's]

>admission that the crack cocaine belonged to him - supported the jury's finding that the gun was used to facilitate drug trafficking.

McCoy, 303 Fed. Appx. at 47.

The evidence that Defendant used the handgun for "protection" provided further support for the conclusion that the gun was used in furtherance of Defendant's drug distribution crimes. Id. (citing United States v. Snow, 462 F.3d 55, 63 (2d Cir. 2006) ("From the proximity between the handguns, proceeds, trace amounts of drugs, and drug paraphernalia, a reasonable juror could conclude that the person to be protected was a drug dealer and drug packaging paraphernalia, and the proceeds of drug trafficking were among the things being protected." (internal quotation marks omitted)); Lewter, 402 F.3d at 323 ("In this case, the person to be protected was a drug dealer, and among the things being protected were a saleable quantity of drugs, drug packaging paraphernalia, and the proceeds of drug trafficking."); United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2003) ("When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime."). Defendant's Rule 29 motion directed to Count 6 is denied.

### b. Rule 33 Motion

As to the Rule 33 motion, Defendant asserts through counsel that "there were errors committed during the trial of this indictment that either individually, or in combination, had the effect of denying the defendant a fair trial." Def. Mem. L. p. 1. Defendant contends that (1) the Court erred in admitting testimonial evidence that

Defendant sought to have the confidential informant killed; (2) the Court erred in admitting a letter written by Defendant requesting that the confidential informant be killed; (3) the government incorrectly argued in its rebuttal summation that the jury could infer that Defendant was guilty from his attempt to have the confidential witnesses murdered, and (4) the Court erred by not giving an immediate limiting instruction on this comment.

With respect to the first two allegations, the evidence that Defendant sought to have the confidential informant killed was admissible to rebut Defendant's contention that he had not committed the crimes and had been set up, see Def. Ex. 6, and to demonstrate consciousness of guilt. See United States v. Mickens, 926 F.2d 1323,1329 (2d Cir. 1991) (threats of a "key prosecution witness" admitted as evidence of consciousness of guilt); United States v. Bein, 728 F.2d 107, 115 (2d Cir. 1984) ("Evidence demonstrating a defendant's consciousness of guild is admissible under Fed. R. Evid. 404(b) if the court determines that the evidence is more probative than prejudicial under Fed. R. Evid. 403. . . . Evidence of threats by a defendant against a potential witness against him can, if this balancing test is met, be used to show guilty knowledge.").

While the evidence may have been damaging to Defendant, it was not so prejudicial as to outweigh its probative value. The Court gave limiting instructions when the evidence was admitted and, as discussed below, gave another in the final charge. Defendant's counsel was able to cross-examine Keysha Williams, Defendant's former girl friend who testified about Defendant's request to have the confidential informant killed, in an effort to impeach her testimony.  The Court denied the government's attempt to admit numerous similar letters from Defendant to Williams seeking to have the confidential informant killed, and the Court finds that the evidence that was admitted was not unduly

11

cumulative.

In the government's rebuttal summation, the prosecutor referenced the consciousness of guilt evidence and indicated that the Court would instruct the jury that it could draw an inference of consciousness of guilt from this evidence. The government's conclusion as to what the Court would charge the jury was based upon discussions at the charge conference where the jury charge was read to counsel.  At the conclusion of the rebuttal summation, the following colloquy took place at sidebar:

> MR. CASTILLO: Judge, I do take exception to one thing that the Government said in its rebuttal and that is that he indicated that the jury can expect that you, the Court, is going to instruct the jury that they can infer guilt from -- I don't want to misquote him, but what he said at the end about that he's guilty of the crimes charged in the indictment because of those letters, and I don't think that that's correct.
>
> THE COURT: Well, those letters can be used by the jury as evidence of a guilty mind, that's one of the purposes for offering them. The other was to rebut the evidence you offered about the defendant saying how innocent he was and had been set up. So, I don't understand exactly what the basis of the objection is.
>
> MR. CASTILLO: The objection, your Honor, is, I am sorry I have not been clear, is that he said that the Court is gonna instruct the jury that they can use those letters as evidence of guilt.
>
> THE COURT: No. I am not gonna instruct the jury that.
>
> MR. CASTILLO: That's what I think you said.
>
> MR. DORFMAN: I thought I said the defendant believed he was guilty and that's what the nature of the consciousness of guilt charge was.
>
> THE COURT: I don't remember exactly what you said, but, in any event, you got your exception on the record.
>
> MR. CASTILLO: Thank you, your Honor.

12

> THE COURT:   I don't think it's necessary for me to charge the jury further on that point. Okay, see you guys at quarter to one.

After the lunch recess, the Court charged the jury and provided, *inter alia*, the following instructions relative to the consciousness of guilt evidence:

> You have heard testimony that the Defendant made statements indicating that he believed that an individual was working with the police and would report the Defendant's activities to them.  The Defendant is not on trial for those statements, and you may not consider the evidence as a substitute for proof of guilt in this case.
>
> However, if you find that the Defendant did make the statements, you may, but are not required to, infer that the Defendant believed that he was guilty of some of the crimes for which he is here charged.
>
> Whether or not evidence of the Defendant's statements shows that the Defendant believed that he was guilty of some of the crimes for which he is now charged, and the significance, if any, to be given to such evidence, is for you, the jury, to decide.

The Court finds that, in light of the limiting instructions given to the jury both at the time the evidence was admitted and in the final charge, neither the admission of the evidence nor the prosecutor's comments thereon denied Defendant a fair trial.  Further, given the overwhelming evidence of Defendant's guilt,[3] the Court does not find that the jury reached a seriously erroneous result or that the verdict was a miscarriage of justice.  Therefore, the Rule 33 motion is denied.

### c.     **Defendant's *Pro Se* Motion**

Defendant's *pro se* letter motion is construed as an allegation that he was denied constitutionally effective assistance of counsel and, therefore, should be given a new trial.

---

[3] The evidence against Defendant at trial included, among other evidence, video tapes and audio tapes of Defendant engaging in the drug crimes, a confession signed by the Defendant relative to ownership of the drugs and weapon seized during the search warrant, inculpatory letters written by Defendant, and testimony from various eye-witnesses.

13

Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994) ("[W]e read [a *pro se* litigant's] supporting papers liberally, and will interpret them to raise the strongest arguments that they suggest."). A claim of constitutionally ineffective assistance of trial counsel can form the basis of a Rule 33 motion, see United States v. Arena, 918 F. Supp. 561 (N.D.N.Y. 1996), but to prevail on such a motion the movant must establish both elements of the Supreme Court's two-part test set forth in Strickland v. Washington, 466 U.S. 668, 697, 104 S. Ct. 2052, 2064 (1984).

"To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) counsel's representation fell below an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." United States v. Pitcher, 559 F.3d 120, 123 (2d Cir. 2009)(citing Strickland, 466 U.S. at 694). In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689. Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984). The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment.'" Jackson v. Moscicki, 2000 WL 511642, at * 7 (S.D.N.Y. April 27, 2000)(quoting Strickland, 466 U.S. at 687); see Kimmelman v. Morrison, 477 U.S. 365, 381 (1985)(Petitioner bears the burden of proving

14

"that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.")(citing Strickland, 466 U.S. at 688-89). Furthermore, the Court must evaluate counsel's performance from his perspective at the time of the alleged errors and in the same circumstances. Garcia v. United States, 15 F. Supp.2d 367, 379 (S.D.N.Y. 1998)(citing Strickland, 466 U.S. at 689); see Pitcher, 559 F.3d at 123("'The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error.'")(quoting Kimmelman v. Morrison, 477 U.S. 365, 381, 106 S. Ct. 2574, 91 L. Ed.2d 305 (1986)).

A defendant's "[b]ald assertion that counsel should have conducted a more thorough pretrial investigation fails to overcome the presumption that counsel acted reasonably." Sheedy v. United States, 1997 WL 394664 at *9 (N.D.N.Y. 1997)(citing Strickland, 466 U.S. at 689); see Matura v. United States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(a mere conclusory allegation that counsel was ineffective fails to "establish that his counsel's performance was deficient [and]....fails to overcome the presumption [under Strickland] that counsel acted reasonably...."). "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

Defendant fails to identify any specific errors by trial counsel, relying instead on the generalized assertion that counsel was unprepared. This bald assertion is insufficient to support a valid Strickland claim. Although trial counsel was appointed to represent

15

Defendant shortly before trial, counsel is an experienced criminal defense attorney who appears regularly before the Court. At the time of his appointment, counsel indicated to the Court that he would be able to proceed on the trial date of April 16, 2009. Furthermore, following jury selection on April 16, 2009, the Court adjourned the matter until April 20, 2009 giving defense counsel additional time to prepare for trial.

More importantly, there was no indication from counsel's performance at trial that he was insufficiently prepared or unable to present a defense. Quite to the contrary, defense counsel demonstrated a command for the relevant facts of the case and presented a zealous defense. Defendant has failed to overcome the presumption that counsel acted reasonably and, therefore, has failed to satisfy the first prong of the Strickland test.

To satisfy the second prong of Strickland, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. Assuming, *arguendo*, that counsel was inadequately prepared for trial, Defendant cannot satisfy the second prong of Strickland. As indicated above and at footnote 3, *supra*, there was compelling evidence of Defendant's guilt of all counts of conviction.

Accordingly, the *pro se* motion for a new trial pursuant to Rule 33 is denied. To the extent that the *pro se* motion can read as a motion for judgment of acquittal pursuant to Rule 29, the motion is denied for the reasons discussed above at section III(a).

### III.   CONCLUSION

For the reasons set forth above, Defendant's post-trial motions (dkt. # 63, # 64, and # 70) are **DENIED**.

**IT IS SO ORDERED**

DATED:  October 27, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge